UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY L. TUTORA,

                              Plaintiff,

        v.

SGT. GESSNER #138, *et al.*,

                              Defendants.

No. 17-CV-9517 (KMK)

OPINION & ORDER

Appearances:

Jeremy L. Tutora
Endwell, NY
*Pro Se Plaintiff*

Kellie E. Lagitch, Esq.
Office of the Orange County Attorney
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Jeremy L. Tutora ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983,

against numerous prison officials at the Orange County Jail (collectively, "Defendants"),

alleging that Defendants harassed him in violation of his First Amendment rights while

incarcerated at the jail. (*See* Am. Compl. (Dkt. No. 9).)[1] Before the Court is Defendants'

---

[1] Defendants are: Sgt. Gessner #138 ("Gessner"); Sgt. Kiszka #134 ("Kiszka"); Sgt. Platt #499 ("Platt"); Sgt. Hernandez #131 ("Hernandez"); Sgt. DeGennaro #110 ("DeGennaro"); Sgt. Maiorino ("Maiorino"); Sgt. Kahmar ("Kahmar"); Sgt. Conroy #117 ("Sgt. Conroy"); Correction Officer ("C.O.") Conroy #174 ("C.O. Conroy"); C.O. Wixon #409 ("Wixon"); C.O. Smith #511 ("Smith"); C.O. Manuel ("Manuel"); C.O. Czubak #307 ("Czubak"); C.O. Muller #376 ("Muller"); and C.O. Colon #196 ("Colon"). The Court uses the corrected spellings of Defendants' names as provided by Defendants.
        The Court notes that Hernandez has not been served and counsel has not appeared on his behalf. It appears that Hernandez was not included on the Court's March 12, 2018 Order directing service through the U.S. Marshals Service. (Dkt. No. 12.) The Court has issued a revised Order directing service on Hernandez. (Dkt. No. 46.) The Court lacks personal

Motion To Dismiss.  (Not. of Mot. (Dkt. No. 35).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

On or about August 23, 2017, while incarcerated at Orange County Jail, Plaintiff approached Defendant Manuel about filing a grievance regarding insufficient food on his tray and being unable to consistently take his medications.  (Am. Compl. 1.)[2]  In response, Manuel "became vulgar and shouted threats" at Plaintiff about his grievance request.  (*Id.*)  Plaintiff filed a grievance against Manuel; it alleges that Manuel yelled, "'I can take care guys like you, ask about me,'" causing Plaintiff to "fear for [his] safety."  (*Id.* at 8.)  The grievance was denied as "unfounded."  (*Id.*)

Plaintiff thereafter spoke with Defendant Hernandez.  (*Id.* at 1.)  Hernandez also "became vulgar and threatened" Plaintiff about "'knowing his status' in the jail."  (*Id.*)  Hernandez eventually "gave [Plaintiff] two grievance[] [forms] . . . and told [Plaintiff] [that he] could not write him up or else."  (*Id.*)  Plaintiff filed a grievance against Hernandez; it alleges that Hernandez was "very rude, disrespectful, impatient, forceful, and . . . intimidat[ing]," causing

---

jurisdiction as to Hernandez and, in any event, concludes that Plaintiff fails to state a claim against Hernandez.

Finally, the Court notes that, although service was effected as to C.O. Morris ("Morris"), who was named as a Defendant in Plaintiff's initial Complaint, Morris was not named as a Defendant in the operative Amended Complaint, nor were any substantive allegations made against him.  Accordingly, all claims against Morris are dismissed.

[2] Plaintiff's filings do not use consistent page numbering.  For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of each page.

Plaintiff to "fear for [his] safety." (*Id.* at 11.) The grievance was denied. (*Id.* at 12.)

Following the incidents with Manuel and Hernandez, Plaintiff "continued to be harassed in different forms." (*Id.* at 1.) While in the "mental health dorm," on three occasions, Defendant Sgt. Conroy did "not pop [Plaintiff's] cell for chow run." (*Id.* at 2.) Plaintiff thereafter requested a grievance form from Defendant McCord, but was denied. (*Id.*) McCord "yell[ed] racist comments" at Plaintiff "for wanting to exercise [his] [First] Amendment right," including telling Plaintiff, "'Get into the shower and shut up you monkey, next you will be screaming [I'm] violating your civil rights!'" (*Id.*) Defendant Wixon also "made threatening racist comments to [Plaintiff]," including stating, "'I have a 16 inch rope with your name on it. I was a slave owner for Halloween.'" (*Id.*) Wixon additionally mocked Plaintiff's injuries by doing "fake limps, fake vomit noises, [and] stiff neck jokes." (*Id.*) Sgt. Conroy, McCord, and Wixon "push[ed] [Plaintiff] around not to write grievances." (*Id.*) Plaintiff does not indicate whether he filed a grievance against them; Plaintiff did, however, write multiple letters to the New York State Commission of Correction complaining about their harassment. (*Id.*; *see also id.* at 13–14 (letters).)

In September and October 2017, Defendant Smith "would bang on [Plaintiff's] cell door," refuse to "sign [his] law library slips," "mock [his] injuries," do searches of Plaintiff's cell, "yell in [Plaintiff's] speaker," and "deny [him] supplies." (*Id.* at 2.) Further, Smith "would threaten [Plaintiff] about grievances saying his dad was a sergeant." (*Id.*) Smith at least once "den[ied] [Plaintiff] access to [the] grievance program," (*id.*), as did Sgt. Conroy, Platt, and Gessner, (*id.* at 3). However, Plaintiff attaches grievances against Smith, Sgt. Conroy, Gessner, and Maiorino (but not Platt), alleging that he waited more than eight hours after requesting a grievance form before it was given to him, in violation of a jail handbook, and that he was "put

through extreme stress to get grievances." (*Id.* at 15–17.) The grievances were denied as unfounded. (*Id.*)

On September 28, 2017, Defendant Cologne mocked Plaintiff about his neck injury. (*Id.* at 3.) Plaintiff wrote a grievance against Cologne, (*id.* at 20), which was denied, (*id.* at 21–22). That Plaintiff wrote a grievance on the issue caused Defendant Kiszka to become "outraged" and to "yell[]" and "scream[]" at Plaintiff. (*Id.* at 3.) Kiszka has also "intimidate[d]" Plaintiff by telling him that "nothing will help [Plaintiff] get them to leave [him] alone." (*Id.*) Plaintiff alleges that he did not file a grievance against Kiszka, (*id.*), yet, attaches a letter with an unknown addressee complaining about Kiszka, (*id.* at 23).

In November 2017, Hernandez, DeGennaro, Maiorino, and Kahmar "block[ed]" Plaintiff's "access to [the] grievance program with threats, evasiveness, and direct knowledge of [his] issues." (*Id.* at 3.) However, Plaintiff attaches a grievance against them, which was denied. (*Id.* at 24–29.)

Defendant Muller, on three occasions, "open[ed] [Plaintiff's] mail" outside of his presence, in "direct retaliation for previous grievances." (*Id.* at 3–4.) Plaintiff filed letters of complaint to a captain at the jail and to the New York State Department of Corrections and Community Supervision, alleging that mail was "missing tape and open" and therefore "tampered" with by Muller. (*Id.* at 30–31.)

Defendant Czubak would "mock injuries, be a [deterrent], distract people, give out wrong info or outdated [info] and [would] use his position and seniority to hold [him] back and not allow[] [him] access to Westlaw." (*Id.* at 4.) After Plaintiff wrote a letter to Governor Cuomo, Czubak limited Plaintiff's law library access to once a week instead of three times a week, thereby "not allowing [Plaintiff] adequate time to research [his] case." (*Id.*) Plaintiff did not

suffer any "direct injury," but he suffered "psychological" harm. (*Id.*) Plaintiff filed a grievance against Czubak, which was denied, (*id.* at 42–45), as well as a letter of complaint to Czubak himself, (*id.* at 46).

### B.  Procedural Background

Plaintiff filed his initial Complaint on December 1, 2017.  (Dkt. No. 2.)  On January 3, 2018, the Court issued an Order directing Plaintiff to amend his complaint to further detail his claims.  (Dkt. No. 8.)  On February 14, 2018, Plaintiff filed the instant Amended Complaint. (Dkt. No. 9.)  On July 20, 2018, Defendants filed their Motion To Dismiss and accompanying papers.  (Not. of Mot.; Decl. of Kellie E. Lagitch, Esq. in Supp. of Mot. (Dkt. No. 36); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 37).)  On August 23, 2018, Plaintiff filed his response in opposition to the Motion.  (Pl.'s Resp. to Mot. ("Pl.'s Mem.") (Dkt. No. 39).)  On August 31, 2018, Defendants filed a reply.  (Decl. of Kellie E. Lagitch, Esq. in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 42).)

## II.  Discussion

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue that Plaintiff fails to state a *Monell* claim, fails to state a claim regarding his access to the courts or access to the grievance program, and fails to state a First Amendment retaliation claim.  (Defs.' Mem. 5–17.)[3]  The Court addresses each issue separately.

### A.  Standard of Review

The Supreme Court has held that, although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

---

[3] Defendants also argue that Plaintiff's claim for compensatory damages is barred by the Prison Litigation Reform Act.  (*See* Defs.' Mem. 17.)  The Court need not address this argument.

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alterations, and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1. *Monell* Liability

Plaintiff does not indicate whether he sues Defendants in their individual or official

capacities.  (*See generally* Am. Compl.)  In such instances, courts often construe such claims as

brought in both capacities.  *See Jackson v. Ramirez*, No. 15-CV-617, 2016 WL 796854, at *5

(S.D.N.Y. Feb. 22, 2016), *aff'd*, 691 F. App'x 45 (2d Cir. 2017).  "A claim asserted against a

[defendant] in his official capacity . . . is in effect a claim against the governmental entity itself

. . . for 'official-capacity suits generally represent only another way of pleading an action against

an entity of which an officer is an agent.'"  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir.

2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  "Congress did

not intend municipalities to be held liable [under § 1983] unless action pursuant to official

municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Thus,

"to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a

plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a

constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the

municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d

Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).  In other words, a municipality may not be held

liable under § 1983 "by application of the doctrine of respondeat superior."  *Pembaur v. City of

Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).  Rather, "municipalities may only be held

liable when the municipality itself deprives an individual of a constitutional right."  *Newton v.

City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008).  A plaintiff may satisfy the fifth

element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused

the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Moreover, a plaintiff also must establish an "affirmative" causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

Plaintiff fails entirely to allege the fifth element required to state a *Monell* claim. As Defendants argue, (*see* Defs.' Mem. 6–8), Plaintiff alleges no facts whatsoever suggesting that Defendants acted pursuant to a formal municipal policy or that Defendants are policymakers with authority to create or direct any relevant municipal policy. *See Joseph v. Doe*, No. 16-CV-2004, 2017 WL 4233024, at *4 (E.D.N.Y. Sept. 22, 2017) ("The mere assertion that the Lieutenant [defendant] was responsible for supervising the other [d]efendants is insufficient."). Nor does Plaintiff allege facts showing that similar alleged deprivations occurred as to other inmates, such that it could be said that Defendants acted pursuant to an informal municipal custom or practice. *See Perez v. Annucci*, No. 18-CV-147, 2019 WL 1227801, at *5 (S.D.N.Y. Mar. 15, 2019) ("The amended complaint does not . . . specifically allege any other inmate . . . suffered [the alleged deprivation]."); *see also Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (affirming dismissal of *Monell* claim and noting, "other than the plaintiff, the amended complaint provides only one additional example of a similar incident"). For the same reason, Plaintiff also does not plausibly suggest *Monell* liability on a failure-to-train or failure-to-supervise theory. *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (noting that, to establish a failure-to-supervise theory, the plaintiff must show the

defendants' deliberate indifference "by showing that the need for more or better supervision to protect against constitutional violations was obvious, but that [the defendants] made no meaningful attempt to forestall or prevent the unconstitutional conduct" (citation and quotation marks omitted)); *Falls v. Campbell*, No. 17-CV-35, 2019 WL 1255768, at *5–6 (S.D.N.Y. Mar. 19, 2019) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (quoting *Connick*, 563 U.S. at 62)). Because Plaintiff fails to allege facts satisfying the fifth *Monell* element, Plaintiff's claims against Defendants in their official capacities must be dismissed. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).

## 2. Access to Courts

"To state a claim for denial of access to the courts — in this case due to interference with legal mail — a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citation and quotation marks omitted). "[A] plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in *actual injury* to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (emphasis added) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Actual injury includes "claims that systemic official action frustrates a plaintiff . . . in preparing and filing suits at the present time," and "claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may

be in the future." *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002) (collecting specific examples within each category). "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).

Here, Plaintiff alleges that Muller opened his "confidential" and "legal" mail outside his presence on three occasions, and that Czubak reduced Plaintiff's law library and Westlaw access for several weeks. (Am. Compl. 3–4, 30–31, 42–46.) However, "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis*, 320 F.3d at 352 (citation and quotation marks omitted). Plaintiff does not allege that he was prevented, or even delayed, from making legal filings. There is no indication that any Defendant "obstruct[ed] [Plaintiff's] legitimate efforts to seek judicial redress" or otherwise prejudiced Plaintiff's legal actions. *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) (citation, alteration, and quotation marks omitted); *see also Christopher*, 536 U.S. at 413 (noting right-of-access concerns are implicated when "systemic official action frustrates a plaintiff . . . in preparing and filing suits at the present time").[4] Indeed, Plaintiff admits that he suffered "no direct injury" from his reduced library access. (Am. Compl. 4.) Accordingly, Plaintiff's access-to-courts claim must fail. *See Matthews v. Barq*, No. 18-CV-855, 2019 WL 1025828, at *10 (N.D.N.Y. Mar. 4, 2019) (dismissing access-to-courts claim alleging that the defendant "denied [the plaintiff] access to a legal bag prior to his transport to another facility, and that certain legal materials within the bag were subsequently removed," where no showing of actual injury was made); *Wisdom v. Griffin*,

_____

[4] As Defendants point out, at the time Defendants filed their Motion To Dismiss Plaintiff had three pending cases in this district. (*See* Defs.' Mem. 13.)

No. 17-CV-4837, 2019 WL 452057, at *4 (S.D.N.Y. Feb. 4, 2019) (dismissing access-to-courts claim where the plaintiff did "not allege he was prevented from bringing his habeas corpus petition — which plaintiff in fact successfully filed, and which remains pending — or that any existing legal claim would have succeeded but irreparably was harmed by a defendant's alleged conduct"); *Chavis v. Chappius*, No. 06-CV-543, 2015 WL 1472117, at *10 (W.D.N.Y. Mar. 31, 2015) (dismissing access-to-courts claim where the plaintiff failed to allege that he "was actually hindered or prejudiced by the denial of a legal advance"); *Simmons v. Adamy*, 987 F. Supp. 2d 302, 307–08 (W.D.N.Y. 2013) (dismissing access-to-courts claim where, "[b]y plaintiff's own reckoning, he received an average of at least one or two library call-outs per week," which is "inherently reasonable," and where he "offer[ed] no evidence that he was harmed by the lack of more frequent law library access"); *Rivera v. Pataki*, No. 04-CV-1286, 2005 WL 407710, at *18 (S.D.N.Y. Feb. 7, 2005) (dismissing access-to-courts claim where the "plaintiff [did] not specify any injury").

### 3. Access to Grievance Program

Plaintiff alleges that various Defendants denied him access to Orange County Jail's grievance program. (Am. Compl. 3–4.) As Plaintiff colorfully puts it, "writing a grievance in Orange County Jail was like 'squeezing blood out of a rock!'" (Pl.'s Mem. 5.) Yet, as an initial matter, it is unclear to what extent Plaintiff was denied access, as Plaintiff himself alleges that he filed numerous grievances, (Am. Compl. 1–4), and in fact appends numerous grievances and appeals to his Amended Complaint, (*id.* 8–12, 15–22, 24–25, 42–44). Indeed, the principal complaint in the grievances addressing Plaintiff's alleged denial of access to the grievance program appears to be that he was not timely provided with grievance forms. (*Id.* at 15–17.) However, even assuming Plaintiff was denied access, "inmate grievance programs created by

state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (citations, alterations, and quotation marks omitted); *see also Hernandez v. Goord*, No. 01-CV-9585, 2013 WL 2355448, at *9 (S.D.N.Y. May 29, 2013) ("[The plaintiff] has a First Amendment right to access the courts, but the constitution does not similarly protect his right to access a prison grievance system." (citations omitted)); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("The First Amendment is not implicated . . . where prison officials deny an inmate access to grievance procedures." (collecting cases)). Accordingly, Plaintiff's (unsubstantiated) claim that he was denied access to the Orange County Jail grievance program must be dismissed.

### 4. Retaliation

To state a First Amendment claim of retaliation, an inmate must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the [inmate], and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation, alteration, and quotation marks omitted). An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353 (citation omitted). In determining whether a prison official's conduct constitutes adverse action, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens." *Id.* (citation, alterations, and quotation marks omitted omitted). "[B]ecause virtually any adverse action taken against a prisoner by a prison official —

even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (citation and quotation marks omitted)). Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations" and not stated in "wholly conclusory terms." *Dolan*, 794 F.3d at 295 (citation and quotation marks omitted).

Plaintiff has, as Defendants concede, (*see* Defs.' Mem. 9), engaged in protected speech by filing (numerous) grievances and letters of complaint, thereby satisfying the first *Holland* requirement. *See Booth v. Comm'r of Corr.*, No. 19-CV-100, 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity." (citing *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004))).

As to the second and third *Holland* requirements, however, Plaintiff has not sufficiently alleged that any Defendant took adverse action against him that plausibly is causally connected to Plaintiff's protected conduct.

Plaintiff first alleges that Muller opened his "confidential" and "legal" mail outside his presence on three occasions. (Am. Compl. 3–4.) However, the Amended Complaint does not allege, and the grievances and complaints appended to the Amended Complaint do not show, that Plaintiff filed any grievances or complaints against (or otherwise engaged in protected conduct with respect to) Muller himself prior to Muller's alleged tampering. Nor does Plaintiff allege that Muller was involved in any of the other harassment alleged in the Amended Complaint.

Indeed, Plaintiff does not allege any connection between Muller's alleged tampering and any of the other allegations in the Amended Complaint. Plaintiff thus fails to allege any facts plausibly suggesting that his grievances filed against numerous *other* Defendants were "a substantial or motivating factor" in Muller's conduct. *Hanner v. Westchester County*, No. 16-CV-7610, 2019 WL 1299462, at *8 (S.D.N.Y. Mar. 21, 2019) (quoting *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012)). Further, even assuming a causal connection, Plaintiff has not shown Muller's alleged mail tampering constitutes adverse action. To state a mail tampering claim, "the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." *Davis*, 320 F.3d at 351 (citations and quotation marks omitted). "[A]s few as two incidents of mail tampering could constitute an actionable violation," provided the incidents (1) "suggested an ongoing practice" of unwarranted censorship, or (2) "unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Id.* (citation omitted). Here, Plaintiff alleges three incidents of tampering. (*See* Am. Compl. 3–4.) Because "the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face," the case law "require[s] specific allegations of invidious intent or of actual harm." *Davis*, 320 F.3d at 351. Plaintiff fails to allege facts suggesting either invidious intent or actual harm. The barebones facts as alleged do not indicate Muller was engaged in censorship, let alone intentional censorship, as Plaintiff only claims that mail was opened outside his presence and does not allege that incoming or outgoing mail was missing, restricted, or delayed. *See Mendez v. Quiros*, No. 16-CV-2097, 2017 WL 374462, at *2 (D. Conn. Jan. 25, 2017) (dismissing mail tampering claim where the plaintiff did "not allege . . . that he suffered any injury or prejudice as a result of the opening of the mail outside of his presence and the withholding of the documents"); *Leniart v. Murphy*, No. 11-CV-1635, 2016 WL 1273166, at *13

(D. Conn. Mar. 31, 2016) (dismissing mail tampering claim where the plaintiff did "not claim that [his] mail . . . was censored or confiscated, only that it was read"); *Battice v. Phillip*, No. 04-CV-669, 2006 WL 2190565, at *6 (E.D.N.Y. Aug. 2, 2006) ("[The defendant's] failure to deliver [the plaintiff's] mail on one occasion does not constitute the type of conduct that would deter an ordinary individual from exercising his constitutional rights [because the plaintiff did] not allege, much less present any evidence to show, that he suffered any injury as a result of the minor delay in receiving one piece of mail."); *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *8 (S.D.N.Y. Sept. 29, 2006) (dismissing mail tampering claim where the plaintiff "allege[d] only one instance in which his legal mail was tampered with, and one instance in which his family correspondence disappeared," because the allegations did "not demonstrate a continuing practice or pattern of interference or an actual legal injury," nor did they show "invidious intent or . . . actual harm"); *Rivera*, 2005 WL 407710, at *19 (holding that several incidents of "actively prevent[ing] [the plaintiff] from mailing his documents . . . did not constitute adverse action"). Nor does Plaintiff allege that the alleged tampering "unjustifiably chilled" his right of access to the courts, *Davis*, 320 F.3d at 351, as described *supra* Part II.B.2. Therefore, Plaintiff fails to state a First Amended retaliation claim against Muller.

Plaintiff next alleges that, after he wrote a letter to Governor Cuomo, Czubak restricted Plaintiff's access to the law library from three times per week to once per week for several weeks. (Am. Compl. 4.) Yet, Plaintiff does not allege facts plausibly suggesting that his letter to Governor Cuomo was "a substantial or motivating factor" for Czubak's conduct; indeed, Plaintiff does not indicate how Czubak knew about Plaintiff's letter or what was in the letter that would cause Czubak to reduce Plaintiff's law library access. *Hanner*, 2019 WL 1299462, at *8. Further, assuming a causal connection, Plaintiff does not plausibly allege that Czubak took

adverse action against him, for, as noted *supra* Part II.B.2, Czubak did not "unjustifiably chill[]" Plaintiff's right of access to the courts. *Davis*, 320 F.3d at 351. Put differently, Plaintiff does not allege that Czubak engaged in "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," *id.* at 353, because Plaintiff was not deterred from making court filings and in fact admitted that he suffered no "direct injury," (Am. Compl. 4). Therefore, Plaintiff fails to state a First Amendment retaliation claim against Czubak.

Plaintiff also alleges that he was subjected to retaliatory cell searches. (*See id.* at 2, 13.) However, because "a prisoner has no reasonable expectation of privacy in his or her prison cell . . . a search of an inmate's cell, even for retaliatory reasons, . . . does not implicate a constitutional right." *Battice*, 2006 WL 2190565, at *7 (collecting cases); *Harnage v. Brighthaupt*, No. 12-CV-1521, 2016 WL 10100763, at *6 (D. Conn. June 3, 2016) (holding that "even if [the plaintiff] could demonstrate a retaliatory motive for the search, his claim would be legally insufficient," because a "retaliatory cell search is insufficient to support a First Amendment retaliation claim"), *aff'd*, 720 F. App'x 79 (2d Cir. 2018). Therefore, Plaintiff's First Amendment retaliation claim based on a cell search must fail.

Finally, Plaintiff alleges that Defendants Manuel, Hernandez, McCord, Wixon, Smith, Colon, Kiszka, and Czubak repeatedly verbally harassed him — by being vulgar, shouting threats and intimidating comments, making racist comments, mocking his injuries, and banging on his cell door — in retaliation for the grievances Plaintiff filed. (*See generally* Am. Compl.; *see also* Pl.'s Mem. 8–9.) The Court separates Plaintiff's allegations into two buckets. As to the allegations of harassing, mocking, and racist conduct, Plaintiff's claims do not rise to the level of a constitutional violation. *See Davis*, 320 F.3d at 353 (holding that "[i]nsulting or disrespectful

comments directed at an inmate generally do not rise to this level").  Moreover, Plaintiff does not allege facts plausibly suggesting that this conduct was substantial enough to deter an inmate of ordinary firmness from filing grievances or otherwise engaging in protected conduct; indeed, as noted, the Amended Complaint shows that Plaintiff filed numerous grievances, appeals, and letters of complaint.  *Davis*, 320 F.3d at 352.  Therefore, although Defendants' alleged harassment was, to the say the least, "unprofessional, and caused Plaintiff to suffer legitimate embarrassment and even humiliation, they amount to insulting or disrespectful comments that without more are simply *de minimis* acts that fall outside the ambit of constitutional protection." *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *15 (S.D.N.Y. Dec. 21, 2018) (quotation marks and alterations omitted) (citing *Toliver v. City of New York*, 530 F. App'x 90, 92 (2d Cir. 2013)); *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." (citation and quotation marks omitted)).

As to the allegations of threats, however, "[c]ourts have found that, while verbal threats may qualify as adverse actions, they must be 'sufficiently specific and direct' to be actionable." *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *11 (S.D.N.Y. Sept. 28, 2018); (quoting *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *5 (S.D.N.Y. July 16, 2013)).  "The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."  *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010); *see also Hofelich v. Ercole*, No. 06-CV-13697, 2010 WL 1459740, at *2 (S.D.N.Y. Apr. 10, 2010) (concluding that "whether [verbal threats] constitute adverse action seems to depend on their

specificity and the context in which they are uttered"); *Lunney v. Brureton*, No. 04-CV-2438, 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007) (collecting cases and noting that "verbal threats may constitute adverse action . . . depend[ing] on their specificity and the context in which they are uttered"). Here, Plaintiff alleges that Manuel "became vulgar and shouted threats" at Plaintiff about his grievance request, (Am. Compl. 1); that Manuel later yelled, "I can take care guys like you, ask about me,'" causing Plaintiff to "fear for [his] safety," (*id.* at 8); that Hernandez "threatened" Plaintiff about "'knowing his status' in the jail," (*id.* at 1); that Wixon stated to Plaintiff, "'I have a 16 inch rope with your name on it. I was a slave owner for Halloween,'" (*id.* at 2); that Smith "would threaten [Plaintiff] about grievances saying his dad was a sergeant," (*id.*); and that Kiszka "intimidate[d]" Plaintiff by telling him that "nothing will help [Plaintiff] get them to leave [him] alone," (*id.* at 3). As reprehensible as these alleged threats are, they are insufficiently specific, direct, and detailed enough to state a First Amendment claim based on a verbal threat. *See Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *18 (S.D.N.Y. Mar. 30, 2016) (holding statement that officer "told [the plaintiff] that grievances were unlikely to succeed and said that he would handle things 'his way'" was insufficiently specific or direct); *Amaker v. Annucci*, No. 14-CV-9692, 2016 WL 5720798, at *5 n.8 (S.D.N.Y. Sept. 30, 2016) (holding statement that officer told the plaintiff "I would not grieve it if I were you" insufficient because it "amounts, at most, to a vague intimation of some unspecified harm which generally does not rise to the level of adverse action" (citation, alterations, and quotation marks omitted)); *Bartley v. Collins*, No. 95-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (finding that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"). Plaintiff does not allege that any Defendant seriously threatened him with physical harm. *Cf. White*, 2018 WL

19

6726555, at *18 (holding adverse action satisfied where a defendant "threatened physical harm to [the plaintiff], and did so with particularity, by pointing to . . . who would harm [him] . . . and explaining why they would harm him"). Nor does Plaintiff indicate that the Defendants' alleged threats were substantial enough to deter an inmate of ordinary firmness from filing grievances or otherwise engaging in protected conduct, *Davis*, 320 F.3d at 352, for Plaintiff filed numerous grievances, appeals, and letters of complaint during his time at Orange County Jail, and does not allege what further grievances or complaints he would have filed had Defendants not allegedly prevented him from doing so. Therefore, keeping in mind that this Court must "approach prisoner retaliation claims with skepticism and particular care," *Dolan*, 794 F.3d at 295, the Court concludes that the Amended Complaint contains insufficiently specific and detailed factual material to make out a First Amendment claim based on retaliatory threats.

Accordingly, Plaintiff's retaliation claims against all Defendants are dismissed.

### III.  Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted.

Plaintiff's claim that he was denied access to the grievance program is dismissed *with* prejudice, as are Plaintiff's claims against Defendant Morris. Plaintiff's remaining claims are dismissed *without* prejudice. If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the second amended complaint will replace, not supplement, all prior complaints and filings. The second amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to

consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 35), and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:     March 27, 2019
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE